# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO CORTEZ BUCKLEY, | CASE No. 1:04-cv-05622-LJO-MJS |
| Plaintiff, | FINDINGS AND RECOMMENDATION FOR DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | (ECF No. 78) |
| A.K. SCRIBNER, et al., | FOURTEEN-DAY OBJECTION DEADLINE |
| Defendants. | |

## I. PROCEDURAL HISTORY

Plaintiff Antonio Cortez Buckley, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action on April 26, 2004 pursuant to 42 U.S.C. § 1983. (ECF No. 1.) This action for damages proceeds on First Amended Complaint (ECF No. 26) claims that Defendants Dotson, Parangan, Jarralimillio, Peck, Lerman,[1] and Ocegura[2] violated Plaintiff's First Amendment right to free exercise of religion. (ECF

---

[1] Variously "Lerma".

[2] Now deceased.

-1-

Nos. 29, 48, 51.)

Plaintiff, a Chabad Orthodox Jewish prisoner,[3] claims Defendants substantially burdened his religious practice while he was housed at Corcoran State Prison ("CSP"), by (1) searching his cell and confiscating religious items - kippahs (headwear) and a tallit[4] (prayer shawl), (2) denying access to the prison chapel for Jewish service, and (3) destroying the confiscated kippahs and tallit.[5]

On July 11, 2012, Defendants filed a Motion for Summary Judgment. (ECF No. 78.) Pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012) and Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), the Court notified Plaintiff of his rights, obligations and methods for opposing Defendants' motion. (ECF No. 81.)

On September 4, 2012, Plaintiff filed Opposition to Defendants' Motion. (ECF Nos. 85-89.) On September 11, 2012, Defendants filed a Reply. (ECF No. 94), along with Evidentiary Objections.[6] (ECF No. 95.) Defendants filed a Supplemental Reply on October 1, 2012. (ECF No. 98.) Plaintiff filed a Sur-Reply in response to Defendants' Supplemental Reply on October 22, 2012. (ECF No. 101.)

---

[3] Plaintiff claims membership in the Chabad Sect of Orthodox Jews. (Sur-Reply, Pl. Decl. in Supp., ECF No. 101.)

[4] Variously "tallis".

[5] The Court disregards alleged confiscation of a religious folder raised for the first time in Plaintiff's Opposition. The operative First Amended Complaint and the Court's screening decisions control and a party may not amend claims by way of an opposition to a motion for summary judgment. E.g., Fossen v. Blue Cross and Blue Shield of Montana, Inc., 660 F.3d 1102, 1115 (9th Cir. 2011); Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1079-80 (9th Cir. 2008).

[6] Except as otherwise indicated, Defendants' evidentiary objections are overruled.

Defendants' Motion for Summary Judgment has been submitted upon the record. These Findings and Recommendations now issue. Local Rule 230(l).

For the reasons set forth below, the Court recommends that Defendants' Motion for Summary Judgment be denied.

## II. LEGAL STANDARDS

### A. Summary Judgment

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party can not produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). While the Court may consider other materials in the record not cited to by the parties, it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir.2010). However, in judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless,

Inc., 509 F.3d 978, 984 (9th Cir. 2007), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).

### B.    Free Exercise Claims Under 42 U.S.C. Section 1983

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir.2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002). Under section 1983, Plaintiff must demonstrate a link between the actions or omissions of each named defendant and the violation of his rights; there is no respondeat superior liability under section 1983. Ashcroft v. Iqbal, 556 U.S. 662, 676–77 (2009); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

Plaintiff's claim arises from the alleged violation of his rights under the Free Exercise Clause of the First Amendment. "Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." Hartmann v. California Dep't of Corrections, — F.3d ----, ---- (No. 11-16008), (9th Cir. Feb. 19, 2013), citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, Everson v. Bd. of Educ. of Ewing Twp., 330 U.S. 1, 8 (1947), "prohibits government from making a law 'prohibiting the free exercise [of religion].' " Cruz v. Beto, 405 U.S. 319, 322 (1972).

-4-

The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884–85. "To prevail on [his] Free Exercise claim, [plaintiff] must allege facts plausibly showing that the government denied [him] a reasonable opportunity of pursuing [his] faith comparable to the opportunity afforded fellow prisoners . . . ." Cruz, 405 U.S. at 322.

However, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. O'Lone, 482 U.S. at 348. "To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 482 U.S. at 349. Under this standard, when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987).

C.   **Qualified Immunity**

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials

from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address qualified immunity claims in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 555 U.S. at 236, 129 S.Ct. at 818; Mueller, 576 F.3d at 993–94.

### III.  FACTS

The facts material to this motion are outlined as follows:[7]

#### A.  Undisputed Material Facts (UMF's)

Plaintiff was the only Jewish inmate of the 1000 inmates on his yard.

CSP had no rabbi; no established Jewish religious program; no scheduled Jewish services; and no designated chapel time.

Jewish inmates could access the chapel when a chaplain was available to meet and the inmate was authorized to leave his cell.

Plaintiff had no chrono to possess religious property or attend religious services.

---

[7] Except as otherwise indicated, disputes as to the facts and objections to evidence in support thereof are found not to be material to resolution of the underlying free exercise claim and will not be resolved here.

In an April 9, 2003 Memorandum, a prison official, the Muslim Chaplain, approved Plaintiff's possession of a black kippah, a white kippah, and a tallit.[8]

Defendants Dotson and Lerman, on April 9, 2003, confiscated Plaintiff's black kippahs among other colors, allowing Plaintiff to keep a green kippah and a white kippah.

Defendants Jarralimillio and Parangan, on April 29, 2003, confiscated from Plaintiff a white kippah.

The confiscated kippahs were destroyed on May 11, 2003.

An inmate may designate that his unauthorized property be sent home at the inmate's expense, donated to a charitable organization, or donated to the facility.

**B.     Disputed Material Facts (DMF's)**

Wearing a "black" kippah is not a central religious tenet of Plaintiff's Chabad Orthodox Jewish religion.

Kippahs confiscated by Defendants Dotson and Lerman on April 9, 2003, and the kippah confiscated by Defendants Jarralimillio and Parangan on April 29, 2003, were taken because the kippahs were unauthorized in color or quantity and not in retaliation for exercise of Plaintiff's Jewish faith.

Defendant Dotson did not confiscate Plaintiff's white prayer tallit on April 9, 2003.

Defendants denied Plaintiff access to the chapel on April 15, 2003 because he

---

[8] Defendants to not appear to dispute this fact, but lodge evidentiary objections overruled herein. See n.6. The further objection on discovery grounds, deemed a request for discovery sanction not before the Court on a Rule 56 motion, is denied; Defendants have had ample opportunity to review and respond to the April 9, 2003 Memorandum and can not show prejudice therefrom. See e.g. Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001.)

was not then authorized to use the chapel, not in retaliation for Plainitff's exercise of his Jewish faith.

The confiscated kippahs and (any confiscated) tallit were destroyed on May 11, 2003, consistent with prison policy.

No reasonable officer in Defendants' position would have any reason to believe unlawful action was taken.

## IV.  DISCUSSION

Defendants' motion for summary judgment on Plaintiff's First Amendment claim should be denied. Defendants have not shown an absence of genuine dispute as to all material facts leaving Defendant entitled to judgment as a matter of law. If resolved favorably to Plaintiff, material facts in dispute could support a finding on his free exercise claim.

### A.  Conduct Violating the Free Exercise Clause

#### 1.  Confiscation of Kippahs

Defendants claim Plaintiff was allowed to keep a maximum of two kippahs in colors which do not pose a prison security concern (UMF 6, 34). The black kippahs were taken because that color is associated with gang activity and presents a security concern. (UMF 3, 4, 5.) Defendants further claim Jewish law does not require a kippah be of any particular color; it does not require that Plaintiff wear a "black" kippah. (Revah Decl. in Supp.)

Plaintiff claims wearing a kippah is mandated by and central to his religious practice. (First Am. Compl.) He claims the Muslim Chaplain's April 9, 2003 Memorandum authorized him "to retain and wear a black Kippah and a white Kippah,

-8-

subject to all institutional safety and security concerns" provided that "[a]t no time [was he] to possess more than one (1) black and/or one (1) white Kippah." (Pl. Opp'n Ex. 6.) Plaintiff further claims his "black" kippah is fundamental to his beliefs as a member of the Chabad Sect of Orthordox Jews. (Sur-Reply, Pl. Decl. in Supp.)

The First Amended Complaint, which frames the claims in issue here, does not allege that a "black" kippah has special significance over other colors. Plaintiff does not refute Defendants' evidence to the effect that the color black was prohibited for security reasons. Accordingly, Plaintiff's free exercise claim cannot rest on alleged confiscation of his "black" kippahs. Plaintiff concedes that, on April 9, 2003, he was allowed to retain a white kippah and a green kippah. (Pl. Decl. in Opp'n Ex. 22.)

After the April 29, 2003 confiscation of his white kippah by Defendants Jarralimillio and Parangan, Plaintiff retained at least one, and possibly two, kippahs in allowed colors. (Id.; DMF 39.) However, it appears the white kippah confiscated was Plaintiff's only white kippah. (First Am. Compl.; Pl. Decl. in Opp'n, Ex. 22.)[9] This confiscation would be contrary to the April 9, 2003 Memorandum allowing Plaintiff to possess one white kippah. (Pl. Opp'n Ex. 6.) Defendants provide no evidence that white is a color presenting security or safety concerns or that the confiscated white kippah exceed an allowable number of kippahs. Defendants provide no evidence suggesting a penologic or governmental rationale for the April 29, 2003 confiscation of Plaintiff's white knitten kippah.

---

[9] Plaintiff's First Amended Complaint is verified and therefore, it is treated as an opposing declaration to the extent it is based on Plaintiff's personal knowledge of specific facts which are admissible in evidence. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

Plaintiff contends that after April 29, 2003, he was unable to wear his (remaining) green kippah outside his cell because the color was not authorized by the April 9, 2003 Memorandum. As a result Plaintiff no longer had any which complied with the April 9, 2003 Memorandum.

As in Boles v. Neet, 486 F.3d 1177, 1182-83 (10th Cir. 2007), a free exercise violation may exist where prison authorities refuse, without a legitimate penologic purpose, to allow a Jewish inmate to wear a yarmulke.

### 2. Confiscation of Tallit

Defendants claim there is no evidence that Defendant Dotson confiscated Plaintiff's tallit. Dotson claims he has never seen a tallit, confiscated a tallit, or taken Plaintiff's tallit. (Dotson Supp. Decl. in Reply.) Defendants also claim that a tallit is not central to Plaintiff's religious practice because Jewish law does not require that it be worn under garments such as those worn by state prisoners. (Revah Decl. in Supp.) Defendants claim that even without a tallit, Plaintiff was able to comply, without substantial burden, with the requirements of Jewish law and observe his Jewish religion. (Id.)

Plaintiff claims Dotson confiscated his tallit on April 9, 2003 (First Am. Compl; Pl. Decl. in Opp'n, Ex 22) even though the April 9, 2003 Memorandum authorized him to possess it. (Pl. Opp'n Ex. 6.) Plaintiff claims the tallit is fundamental to his sincerely held Chabad Orthodox Jewish religious practice (First Am. Compl.; Pl. Decl. in Opp'n; Sur-Reply, Pl. Decl. in Supp.), and that Rabbi Revah is wrong to suggest otherwise. He attaches to his Sur-Reply extracts from books by Jewish religious experts which he

feels support this conclusion,[10] and argues that in his view the Torah requires as much. He cites to his twenty plus years of Chabad Orthodox Jewish practice, including time as leader of Orthodox Jewish services under the supervision of Chaplain Rabbi Friedman (Sur-Reply Ex.'s F, G, H), and a purported 2008 General Chrono from Rabbi Friedman allowing him a tallit as fundamental to Jewish religious practice and authorized by prison regulations. (Sur-Reply, Ex. G.)

The evidence provided by the parties indicates that Plaintiff possessed only one tallit. There remains a factual dispute as to whether Dotson confiscated that tallit. There is a dispute between the parties as to whether a tallit is a requirement of Plainitfff's Chabad Orthodox religious beliefs.  Both issues are material to the dispute at hand. The court can not resolve either dispute on the facts and evidence before it. Plaintiff's free exercise claim based upon confiscation of the tallit can not be resoved in defendant's favor on summary judgment..

        3.    Chapel Access

Defendants claim that, if Plaintiff was denied access to the chapel on April 15, 2003, it was only because he was not authorized to use it on that date. (UMF 8, 12.)

Plaintiff claims that on April 15, 2003, he had authorization from Housing Unit Officer Gomez to go to the chapel to speak with Chaplin El-Amin, who awaited him there, and for Jewish religious service after the meeting. (Pl. Decl. in Opp'n, Ex. 22.)

Plaintiff submits  in support  a purported "inmate pass" dated "4-15" to the "3C

---

[10] Plaintiff's Sur-Reply, Exhibits A-E, lack foundation and authentication and are not considered by the Court. Unauthenticated documents cannot be considered in a motion for summary judgment. Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 533 (9th Cir. 2011), citing Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).

-11-

Chapel" to see the "Muslim Chaplain." (Pl. Opp'n, Ex. 18.)[11]

The evidence before the Court leaves a factual dispute as to whether Plaintiff was authorized to access the chapel for religious purposes on April 15, 2003.

Defendants claim Plaintiff had available alternative means of exercising his religion by in-cell worship and that denial of chapel access was not a substantial burden. However, an alternative means analysis does not come into play unless there exists a penologic purpose or legitimate governmental objective in denying access. See Turner, 482 U.S. at 89-90. Defendants do not identify any such legitimate purpose for denying Plaintiff access to the chapel on April 15, 2003.

Defendants have not demonstrated an absence of evidence supporting Plaintiff's free exercise claim based upon denial of chapel access. See O'Bryan v. Saginaw County, Mich., 437 F.Supp. 582, 600 (D.C. Mich. 1977) (the right to attend religious services may be denied only to those inmates for whom such would create an unreasonable security risk).

### 4. Destruction of Kippahs and Tallit

Defendants claim Plaintiff's unauthorized yamulkes were destroyed on May 11, 2003, by Defendant Ocegura (now deceased) (UMF 28, 29). The destruction was consistent with prison procedures where, as here, Plaintiff lacked the funds to implement his direction that the yamulkes be mailed to his home. (UMF 23-28.) Defendant Peck claims he has never spoken to Plaintiff did not participate in Defendant Ocegura's destruction of Plaintiff's religious property. (UMF 29.) Defendants claim that

---

[11] Defendants objection to Ex. 18 for lack of authentication is sustained. The purported pass is disregarded.

there is no evidence the tallit was destroyed along with the kippahs. (Peck Decl. In Supp., Ex. B.)

Plaintiff claims Defendant Peck told him that he (Peck) and Ocegura destroyed the confiscated religious property including the tallit. (Pl. Decl. in Opp'n.) Plaintiff claims that, pursuant to an April 18, 2003 Warden's Memorandum, the property should not have been destroyed because Plaintiff had a related inmate appeal pending. (Pl. Opp'n Ex. 1.)

There remains a dispute of fact whether Defendant Peck participated in the alleged May 11, 2003 destruction of Plaintiff's religious property. Defendant Peck points out that Defendant Ocegura signed the document relating to the destruction but did so under Defendant Peck's printed name. (Peck Decl. In Supp., Ex. B.) Plaintiff claims that on May 12, 2003, Defendant Peck told him that he and Officer Ocegura "threw [his] five Jew boy caps (kippahs) and Jew boy t-shirt (tallit katan) in the trash." (Pl. Decl. in Opp'n.)  The fact that Ocegura signed does not rule out Peck's participation.  According to Plainitff, Peck admitted to participation in the destruction.  Peck's denail leaves us with a dispute for the trier of fact to resolve.

There also is a dispute as to whether the alleged May 11, 2003 destruction of Plaintiff's religious property was contrary to prison policy and thus unauthorized. Plaintiff agrees with Defendants that he directed his property be mailed-out to his home and authorized his prison trust account be debited for the cost of mailing.[12] He also points to the April 18, 2003 Warden's Memorandum precluding  mail from facility 3C of such

---

[12] Plaintiff's claim that he directed home mailing only in order to get a receipt for the property does not create a dispute of fact in this regard.

-13-

property pending appeal review or a supervisor's determination under OP 804.[13] (Pl. Opp'n Ex. 16.)

Plaintiff is a Facility 3C inmate. (Pl. Opp'n Ex. 1.) His religious property was subject to appeal at the time is was destroyed. (First Am. Compl.; Pl. Opp'n Ex. 4.) Defendants have not shown they satisfied the conditions for mail-out contained in the Warden's could not debit Plaintiff's trust fund for the cost of a mailing which could not occur. Thus Defendants' proposed justification for destroying the property, Plaintiff's lack of funds to mail the property, is not persuasive.

There also is a factual dispute as to whether the tallit was among the property allegedly destroyed on May 11, 2003. Defendants claim only kippahs were destroyed. (Peck Decl. in Supp., Ex.'s A, B.) Plaintiff claims Defendant Peck told him the tallit was destroyed along with the kippahs. (Pl. Decl. in Opp'n.)[14] A as discussed above, the tallit appears to be an essential component of Plaintiff's religious practice and Plaintiff was authorized to possess it pursuant to the Muslim Chaplain's April 9, 2003 Memorandum.

Accordingly, Defendants have not proved an absence of evidence supporting Plaintiff's free exercise claim based upon destruction of his religious property.

### B. **Clearly Established Right**

Having determined Defendant's conduct violated the First Amendment, the Court must determine whether the right was clearly established. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer

---

[13] CSP Operation Procedure 804, entitled Religious Programs. Ex. B to Dotson Decl. in Supp. (ECF No. 78 Ex. B.)

[14] Defendants' objection to Ex. 10 to Plaintiff's Declaration in Opposition on grounds of foundation and authentication is sustained. The Inmate Property Inventory is disregarded.

would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." Hope, 536 U.S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir.2002), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," Hope, 536 U.S. at 741.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, ––– U.S. ––––, ––––, 131 S.Ct. 2074, 2085 (2011). The salient question is whether the state of the law in 2003 gave Defendants fair warning that their alleged treatment of Plaintiff was unconstitutional. Hope, 536 U.S. at 741.

Where , as here, there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. See Liston v. County of Riverside, 120 F.3d 965, 967 (9th Cir. 1997); Collins v. Jordan, 110 F.3d 1363, 1369 (9th Cir. 1997); Alexander v. City of San Francisco, 29 F.3d 1355, 1364 (9th Cir. 1994); ACT UP!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993). Such is the case here, for the reasons discussed above.

Accordingly, Defendants' qualified immunity claim can not be resolved on summary judgment.

**V.   CONCLUSIONS AND RECOMMENDATION**

For the reasons set forth herein, the undersigned RECOMMENDS that

Defendants' Motion for Summary Judgment filed on July 11, 2012 (ECF No. 78) be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(I). Within fourteen (14) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within seven (7) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  February 28, 2013                    /s/ *Michael J. Seng*
                                             UNITED STATES MAGISTRATE JUDGE